IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al. | Case No. 08-12229 (MFW) |
| Debtors. | Jointly Administered |
| MICHAEL WILLINGHAM and ESOPUS CREEK VALUE LP, | Adv. Pro. No. 10-51297 (MFW) |
|  | Re: D.I. 14 |
| Plaintiffs, |  |
| - against - |  |
| WASHINGTON MUTUAL, INC., |  |
| Defendant. |  |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, | Adv. Pro. No. 10-50731 (MFW) |
| Plaintiff, |  |
| - against - |  |
| WASHINGTON MUTUAL, INC., |  |
| Defendant. |  |

**DEFENDANT WASHINGTON MUTUAL, INC.'S
RESPONSE TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS' STATEMENT ON STATUS OF THE ADVERSARY PROCEEDINGS,
REQUEST FOR HEARING ON PENDING MOTIONS, AND CLOSE OF DISCOVERY**

Washington Mutual, Inc. ("WMI"), as debtor in possession and defendant herein, hereby responds to the *Statement on Status of the Adversary Proceeding, Request for Hearing on Pending Motions, and Close of Discovery* (the "Statement") [D.I. 14, Adv. Proc. No. 10-51297], filed by the Official Committee of Equity Security Holders (the "Equity Committee"), and in support thereof states as follows:

## BACKGROUND

1. On September 26, 2008, WMI and WMI Investment Corp. (collectively, "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. On January 11, 2010, the United States Trustee appointed the Equity Committee. Since its appointment, three of the seven appointees to the Equity Committee have resigned. Similarly, the Equity Committee has changed primary legal counsel.

3. On March 3, 2010, the Equity Committee filed the above-captioned adversary proceeding (the "Equity Committee Adversary Proceeding"), seeking an order under Washington law compelling WMI to convene an annual shareholders' meeting for the election of directors. [D.I. 1.][1] Eight days later, the Equity Committee filed its *Motion for Summary Judgment, or in the Alternative, for Relief from the Automatic Stay* (the "Motion for Summary Judgment"). [D.I. 3.]

4. On April 7, 2010, WMI filed its *Opposition to Plaintiff's Motion for Summary Judgment, or in the Alternative, for Relief from the Automatic Stay*. [D.I. 9.] WMI preliminarily

---

[1] Unless otherwise noted, docket citations refer to the Bankruptcy Court's docket for the Equity Committee Adversary Proceeding (Adv. Proc. No. 10-50731).

set forth four principal grounds for opposing the Motion for Summary Judgment: (1) the Equity Committee's clear abuse of process; (2) WMI's insolvency and the resultant absence of distributions pursuant to the Debtors' chapter 11 plan; (3) Washington law affording the Bankruptcy Court discretion whether to compel a shareholders' meeting; and (4) the Bankruptcy Code's authorization for curtailment of shareholders' rights when equitable to do so. (See Opp. Mot. Summ. J. at 2.) In addition, WMI asserted that, "[a]t a minimum, the Debtors should be permitted to obtain discovery into several genuine issues of fact so that they may present evidence at trial demonstrating that (1) the Equity Committee's efforts will severely jeopardize, and are in fact designed to upset, the Debtors' chapter 11 efforts at this critical juncture, and (2) the Debtors are insolvent." (Id. at 4-5.) The same day, WMI filed its *Answer and Counterclaim to Plaintiff's Complaint*, seeking a stay of the Equity Committee Adversary Proceeding under 11 U.S.C. § 105(a). [D.I. 8.]

5. On April 18, 2010, the Equity Committee filed its *Reply to Opposition of Defendant Washington Mutual, Inc. to Plaintiff's Motion for Summary Judgment, or in the Alternative, for Relief from the Automatic Stay*. [D.I. 15.]

6. By order, dated April 26, 2010, the Bankruptcy Court ruled that, although the automatic stay is "inapplicable to an action by any one or more shareholders of WMI . . . seeking to compel WMI to hold an annual shareholders meeting," the "foregoing is without prejudice to the rights of WMI to contest the relief requested in any such action and in any such court" and the "relief granted herein does not affect, nor is it intended to affect, the rights of WMI with respect to the Counterclaim. . . ." [D.I. 20.]

7. The same day, Mr. Michael Willingham, the chairperson of the Equity Committee, and Esopus Creek Value LP, a member of the Equity Committee (collectively, the

"Plaintiffs")—two of the four remaining Equity Committee members—filed an action (the "Washington State Action") in the Superior Court of the State of Washington, for the County of Thurston (the "Washington State Court"), that virtually mirrors the Equity Committee Adversary Proceeding. On May 5, 2010, the Plaintiffs filed a *Motion for Order to Compel Shareholder's Meeting* (the "Motion to Compel").

8. On May 13, 2010, in the accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure, in the United States Bankruptcy Court for the Western District of Washington, WMI filed a *Notice of Removal*. [Bankr. W.D. Wash. Adv. D.I. 1.] On May 14, 2010, WMI filed a *Motion to Transfer, Stay, or Dismiss the Instant Action* (the "Motion to Transfer, Stay, or Dismiss"), seeking to transfer, stay, or dismiss the Washington State Action in favor of the Equity Committee Adversary Proceeding. [Bankr. W.D. Wash. Adv. D.I. 11.]

9. On May 21, 2010, the Plaintiffs filed a *Motion to Remand or in the Alternative Transfer for Hearing on Remand* (the "Motion to Remand"), seeking an order remanding the Washington State Action to the Washington State Court or, in the alternative, transferring the Washington State Action to the Bankruptcy Court for a decision on remand. [Bankr. W.D. Wash. Adv. D.I. 20.]

10. On June 17, 2010, United States Bankruptcy Judge Paul D. Snyder of the United States Bankruptcy Court for the Western District of Washington orally ruled that the Washington State Action had been removed properly by WMI and, upon entry of an order of the court, the Washington State Action would be transferred to the Bankruptcy Court, subject to the Plaintiffs' right to seek from the Bankruptcy Court an order remanding the Washington State Action to the Washington State Court. (Hr'g Tr., Michael Willingham and Esopus Creek Value LP v. Washington Mutual, Inc., No. 10-04136-PBS, 12:8-10, June 17, 2010.) By order, dated June 21,

2010, Judge Snyder memorialized such ruling and transferred the Washington State Action to the Bankruptcy Court. [Bankr. W.D. Wash. Adv. D.I. 40.]

11. On June 28, 2010, the Plaintiffs filed in the Bankruptcy Court a *Notice of Withdrawal*, withdrawing the Motion to Remand. [D.I. 3, Adv. Proc. No. 10-51297.]

12. On August 3, 2010, the Equity Committee filed a *Motion for Order (I) Granting Intervention and (II) Consolidating Adversary Proceedings*. [D.I. 9, Adv. Proc. No. 10-51297.] On August 23, 2010, the Washington State Action was consolidated with the Equity Committee Adversary Proceeding. [D.I. 58; D.I. 13, Adv. Proc. No. 10-51297].

**Discovery Requests**

13. On June 4, 2010, WMI served the *First Request for Production of Documents Directed to the Official Committee of Equity Security Holders of Washington Mutual, Inc.* (the "Document Request") and *Notices of Deposition* for the seven appointed members of the Equity Committee. [D.I. 32-39.] Thereafter, the Equity Committee's counsel informed the Debtors of the previously undisclosed resignations of two of the originally-appointed Equity Committee members: Ms. Joyce Presnall and Mr. Tyson Matthews. As a result, the Debtors agreed that they would defer deposing these two former Equity Committee members until the conclusion of the current Equity Committee members' depositions.[2]

14. On July 2, 2010, the Equity Committee served the *Responses and Objections to Debtor's First Request for Production of Documents* and, approximately three weeks later, produced approximately 450 pages of documents, of which approximately 200 pages consisted of copies of court opinions and articles.

---

[2] Thereafter, the Equity Committee informed the Bankruptcy Court and the Debtors of the resignation of Mr. Saul Sutton.

15. Subsequently, the Debtors' counsel raised with the Equity Committee's counsel several document search, review, and production issues, including with respect to the fact that Equity Committee members were not instructed to retain documents until the Document Request was served (as opposed to when the Equity Committee Adversary Proceeding was filed).

16. On August 4, 2010, the Debtors' counsel requested that the Equity Committee's counsel clarify whether the Equity Committee members, as opposed to legal counsel, conducted the initial document collection, whether any Equity Committee member had any document retention policy, and whether legal assistants, as opposed to legal counsel, conducted the Equity Committee's document review, including with respect to the applicability (or lack thereof) of the attorney-client privilege and attorney work product to particular documents. When, after approximately two days, the Debtors' counsel received no response to this request, a second request was made. In response, Mr. Steve Susman, the Equity Committee's lead counsel, informed the Debtors' counsel that they should expect no substantive response and that, instead, the Debtors should "File away" and "Make [his] day!!"

17. On July 20, 2010, following discussions among the Bankruptcy Court and all parties in interest, the Bankruptcy Court announced that it would appoint an examiner to investigate, among other things, the claims and causes of action being compromised and settled and assets being transferred and conveyed pursuant to a proposed global settlement agreement. At such omnibus hearing, held on July 20, 2010, and in an effort to afford the yet un-appointed examiner an opportunity to undertake and complete his investigation, the Bankruptcy Court (a) adjourned consideration of several discovery matters, and (b) addressed "the issue of the shareholders' meeting" and determined to "continue that to September 7th as well." Specifically, the Bankruptcy Court stated that:

> I think that I need more information as to whether or not that
> should proceed on a dual track or a triple track with the examiner
> and the confirmation process. If I am convinced by the examiner's
> report that the process should continue to confirmation without a
> shareholder meeting, I'll consider that strongly in my decision on
> the equity committee request for that.

(Hr'g Tr. 109, July 20, 2010.)

18. On July 26, 2010, the United States Trustee appointed Joshua R. Hochberg, of McKenna Long & Aldridge LLP, as examiner (the "Examiner"), and, in accordance with the Bankruptcy Court's Order, the Examiner was directed to prepare and file a preliminary report by September 7, 2010, and a final report detailing his findings (the "Examiner Report") by October 8, 2010.

19. Notwithstanding this prior ruling regarding timing, on August 24, 2010, at the conclusion of that day's omnibus hearing, the Equity Committee's counsel made an unannounced and impromptu plea to have the Motion for Summary Judgment and the Motion to Compel (filed in the Washington State Action) immediately scheduled and heard on September 7, 2010. At that time, the Bankruptcy Court reminded the Equity Committee's counsel that nothing had been calendared for September 7, 2010, and that, based upon the Examiner's progress and status, the Bankruptcy Court would consider the subsequent scheduling of those motions at the September 7, 2010 omnibus hearing. (Hr'g Tr. 62-68, Aug. 24, 2010.)

20. Thereafter, WMI deposed the following Equity Committee members: August 25, 2010—Mr. Willingham; August 31, 2010—Esopus Creek Value LP (through Joseph Criscione, a managing member of Esopus Creek Value LLC, Esopus Creek Value LP's investment advisor); September 2, 2010—Dorthea Barr; and September 3, 2010—Kenneth Feldman. As discussed below, such limited discovery was truncated and far from complete.

21.     On September 3, 2010, the Equity Committee filed the Statement requesting that discovery in the instant action be closed and that the Bankruptcy Court schedule a hearing on the Motion for Summary Judgment and the Motion to Compel for no later than October 8, 2010. In addition, the Equity Committee stated that supplemental briefing with respect thereto is unnecessary. (Stat. ¶ 5 ("The legal issues are straightforward and fully briefed, and no factual questions are materially in dispute.").)

## DISCOVERY AND BRIEFING ARE INCOMPLETE

22.     WMI respectfully submits that, until the Examiner Report has been filed and the parties have completed the necessary supplemental briefing, the Bankruptcy Court should defer scheduling a hearing on the Motion for Summary Judgment, if the Bankruptcy Court determines that one is necessary, and the Motion to Compel. The Bankruptcy Court has correctly noted the relationship among the proposed compromise and settlement that forms the foundation for the Debtors' chapter 11 plan, the investigation of the Examiner and results thereof to be set forth in the Examiner Report, and the issue whether "the [chapter 11] process [in this bankruptcy case] should continue to confirmation without a shareholder meeting." (Hr'g Tr. 109, July 20, 2010.)

23.     Although on August 10, 2010, the Examiner informed the Bankruptcy Court that he has made progress in his inquiry (see Hr'g Tr. 93-96, Aug. 10, 2010), the Examiner Report is not expected to be filed before October 8, 2010. And, upon information and belief, based upon the breadth of documents provided and the scope of interviews conducted and yet to be taken, the Examiner will require an additional three weeks to complete his investigation and file the Examiner Report, i.e., on or about October 29, 2010. Thus, holding a hearing on the Motion for Summary Judgment and Motion to Compel on October 8, 2010—or at any time before the Examiner Report has been submitted and subsequent consideration thereof by the Bankruptcy

Court and all parties-in-interest—would effectively preempt the Bankruptcy Court's scheduling efforts and careful staging of these chapter 11 cases. Such proceedings, and the Bankruptcy Court's efforts to gain the insights of an independent third-party, should not be hijacked by the Equity Committee.

24. As noted above, on September 3, 2010—just four days ago—WMI took the final of four initial depositions (all of which were completed within only seven business days). Holding a hearing on the Motion for Summary Judgment and the Motion to Compel before October 8, 2010, would provide WMI insufficient time to determine whether additional discovery should be taken, including the depositions of the other members appointed to the Equity Committee, and complete the necessary supplemental briefing incorporating the facts learned in discovery, including facts relevant to the case-dispositive issue whether the instant adversary proceedings constitute "clear abuse"—a triable issue of fact. Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 69 (2d Cir. 1986) ("Whether [an] Equity Committee's call for a shareholders' meeting constitutes clear abuse and whether such a meeting would cause irreparable harm to [a debtor's] reorganization are triable issues of fact.") (emphasis added).

25. Likewise, with the consolidation of the Equity Committee Adversary Proceeding into the Washington State Action (as transferred to the Bankruptcy Court), additional legal issues have been raised and must be addressed. The Equity Committee's assertion that the Motion for Summary Judgment and the Motion to Compel are "fully briefed [and] no factual questions are materially in dispute" (Stat. ¶ 5) would render pointless the discovery that has taken place to date and deny the Bankruptcy Court access to information necessary to the resolution of the "clear abuse" issue. Likewise, the Equity Committee's assertion that WMI has engaged in "excessive

and harassing discovery" grossly distorts facts. (Stat. ¶ 8.) First, WMI has taken only four depositions and served a single set of requests for the production of documents. In response, on behalf of the four current Equity Committee members, the Equity Committee produced a single Redweld of documents, containing only approximately 450 pages, approximately 200 pages of which constituted copies of court opinions and articles. This discovery is hardly "excessive." Second, to streamline discovery, WMI offered to withdraw the deposition notices of Lauren Krueger and Andrew Sole, two managing members of Esopus Creek Advisors LLC, and the two frequent Esopus Creek Value LP attendees at meetings and hearings in this case, in favor of a single Rule 30(b)(6) witness.[3] Accordingly, the Equity Committee's erroneous assertions should not cause the Bankruptcy Court prematurely to schedule a hearing on the Motion for Summary Judgment and the Motion to Compel.

## CONCLUSION

26. For all the foregoing reasons, at the present point in time—at least a month (and probably seven weeks) before the Examiner Report is due and before supplemental briefing has been filed—it would be premature to hold a hearing on the Motion for Summary Judgment and the Motion to Compel.

---

[3] Similarly, the Equity Committee's claim that these depositions were "attended by a platoon of lawyers at estate expense" is hyperbolic. WMI sent to the depositions two associates—one to take the deposition and the other to assist him. Although counsel representing other parties-in-interest also attended these depositions, WMI does not control these parties. At their depositions, Messrs. Criscione and Willingham themselves were represented by two lawyers—one from Susman Godfrey L.L.P. and one from Halperin Battaglia Raicht, LLP.

Dated: September 7, 2010
       Wilmington, Delaware

*/s/ Marcos A. Ramos*
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Chun I. Jang (No. 4790)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian S. Rosen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR WASHINGTON MUTUAL, INC.